HYDE *v.* LEISENRING.

1. HUSBAND AND WIFE—ALIMONY—ALLOWANCE OF CLAIM FOR NECESSARIES.

An allowance of temporary alimony to a wife who had separated from her husband, taking their infant child with her, granted upon a petition to which was appended a physician's bill for attendance on the child, verified by the affidavit of the physician, is presumed to include the amount of such bill, and the husband, having paid the allowance, is exonerated from further liability for such services.

2. SAME.

The sufficiency of an allowance of temporary alimony cannot be attacked collaterally.

3. PARENT AND CHILD—LIABILITY FOR NECESSARIES.

The law will not imply a promise on the part of a father to pay for necessaries furnished his infant child while in the custody of its mother, who had left the father's home without cause. Per GRANT, J.

4. SAME—BURDEN OF PROOF.

One who seeks to hold the father liable for necessaries furnished under such circumstances must show that the mother was justified in taking the child away. Per GRANT, J.

5. SAME—EVIDENCE.

In such case, a decree dismissing a bill for divorce filed by the wife is not conclusive, as against the creditor, that the husband was without fault. Per GRANT, J.

Error to Eaton; Smith, J. Submitted October 11, 1895. Decided December 24, 1895.

*Assumpsit* by Rufus J. Hyde against John W. Leisenring for medical services rendered to defendant's infant child. From a judgment for plaintiff, defendant brings error. Reversed.

The facts found by the trial court in this case are as follows:

"*First.* That plaintiff is a physician residing at Eaton Rapids, Mich., and in the month of November, 1890, and the months of January, March, April, May, and August, 1891, made professional visits to defendant's infant child; that the child was very dangerously and seriously sick, and the much greater number of these visits were made in the months of March, April, and May, 1891; that the child was born in October, 1890.

"*Second.* That some time during the month of December, 1890, the defendant and his wife, Susan, separated; and that Susan was the mother of the child.

"*Third.* That plaintiff knew of the separation, and, with the exception of the first visit to the child, made his visits to the home of the mother, in whose custody and care the child was at the time.

"*Fourth.* That plaintiff was in no way employed by the defendant to care for the baby, but that the baby needed the care and attention of a physician, and was so seriously sick as to need a nurse constantly, a great portion, if not all, of the time during the months of March, April, and May, 1891.

"*Fifth.* That on December 15, 1890, the said Susan Leisenring filed her bill for divorce against her husband, all of which plaintiff knew and was fully advised, and that the said bill alleged extreme cruelty and failure to provide.

"*Sixth.* That, during the pendency of said divorce proceedings, orders and decrees were made for the payment of temporary alimony and expenses to said complainant as follows:  February 7, 1891, $50 for expenses, and $3 per week from that date for the support of the said child; May 9, 1891, $20 for additional temporary alimony; July 11, 1891, $75 within 10 days, as additional temporary alimony, and $4 per week from that date for the support of the child, instead of $3 per week as before ordered, and that all of said orders were complied with by the defendant; that the mother of the child had no property or means of support except as she received it from her husband, the defendant in this case.

"*Seventh.* That in April, 1892, said divorce cause was heard in open court, and the bill was dismissed.

"*Eighth.* That plaintiff's bill for services was $52.50 at the date of the last visit, August 8, 1891, no part of which

has been paid, and that his charges were reasonable for the services rendered.

"*Ninth.* That, while the suit was pending in the justice's court, defendant paid into court the sum of $9.10, $2.10 being for costs, and the balance, $7, being the admitted indebtedness to the plaintiff, with the interest thereon.

"*Tenth.* That the orders for temporary alimony made upon May 9, 1891, and July 11, 1891, were made in pursuance of the petition of complainant, Susan Leisenring, supported by the affidavit of Rufus J. Hyde, the plaintiff herein, and others, to which affidavit was attached a copy of plaintiff's bill of items, for which this suit is brought; and that such items so attached to such affidavit are identical with those upon which this suit is brought, up to April 30, 1891."

Upon these facts the court rendered judgment for the plaintiff, on the ground that an implied contract existed on the part of the defendant to pay for necessaries furnished his infant child.

*Fred J. Slayton (H. F. Pennington,* of counsel), for appellant.

*J. B. Hendee* and *C. O. Markham (John M. Corbin,* of counsel), for appellee.

GRANT, J. (*after stating the facts*). 1. No creditor can complain of a husband, or bind him for necessaries on the ground of an implied contract, where the wife herself could not. *Crittenden* v. *Schermerhorn,* 39 Mich. 666. Persons trusting a wife, living separate and apart from her husband, upon his credit, do so at their own peril. *Gill* v. *Read,* 5 R. I. 345; *Bennett* v. *O'Fallon,* 2 Mo. 57. The home, which the father and husband has furnished, is the place in which the law gives him the right to provide for his wife and children. When he has done this, and is ready and willing there to provide for them, according to his means, he has fully performed both his legal and moral

obligation. When, therefore, a minor child of the age of discretion voluntarily and without cause abandons his home, the father is not liable for his care or support. For the same reason, when a wife leaves her husband without justification, and takes their infant child with her, she does not carry with her the credit of her husband for necessaries furnished for either herself or her child. *Corry* v. *Lackey*, 105 Mich. 363; *Bazeley* v. *Forder*, L. R. 3 Q. B. 559; *Baldwin* v. *Foster*, 138 Mass. 449; *Weeks* v. *Merrow*, 40 Me. 151; *Angel* v. *McLellan*, 16 Mass. 28; *Gotts* v. *Clark*, 78 Ill. 229.

None of the authorities cited by the plaintiff, unless it be *Gill* v. *Read, supra*, support the opposite doctrine. Some of them hold that when a decree of divorce has been rendered dissolving the marital relation, but making no provision for the custody and support of the children, the father's duties and obligations remain the same towards his children as they are without a divorce. *Gilley* v. *Gilley*, 79 Me. 292. *Bauman* v. *Bauman*, 18 Ark. 320, goes no further than to hold that if the wife, complainant in a bill for divorce, is dissatisfied with the allowance made by the court for the support of her child, she need not accept the allowance, but may cast the burden upon him by surrendering the child to him. The court said in that case that it did not appear that the father was unwilling to take the child or was an unfit person.

In *Rumney* v. *Keyes*, 7 N. H. 571, the facts were that the husband and wife had never lived together, and he had never made any provision for the support of his wife and child, in consequence of which, she being ill, and unable to support herself and child, both became a charge upon the town. The decision seems to be based upon the fact that under the laws of that State the father had a right to the custody of his children, and might obtain possession of their persons by *habeas corpus*, but that, by suffering them to remain with their mother, he constituted her his agent to contract debts for clothing and necessaries.

The court stated that it had found some difficulties in considering the case on account of the brevity with which it was drawn. The opinion, however, states: "The facts, as stated, leave little doubt that the abandonment was on the part of the husband, but this is not explicitly shown. Sufficient, however, appears to compel the defendant to set up some defense to the claim." The case of *Gill* v. *Read* appears to be based upon that of *Rumney* v. *Keyes*. In this State, however, in the case of the separation of husband and wife, the mother is entitled to the custody of children under 12 years. 2 How. Stat. § 6294. And the court of chancery, in a divorce suit, is authorized to make such order for the care and custody of the children and their suitable maintenance during the pendency of the suit as shall be deemed proper and necessary. Id. 6237. While the former statute would not probably relieve the father of the support of his infant children, it takes away from him the custody of the children, and renders these last two decisions inapplicable to this case. A doctrine directly to the contrary of those decisions is held in *Hancock* v. *Merrick*, 10 Cush. 41; *Husband* v. *Husband*, 67 Ind. 583; *Baldwin* v. *Foster*, 138 Mass. 449. In this State, where the decree of divorce in favor of the wife gave her custody of the child, and made no provision for her support, it was held that the father was not liable to a stranger for the support of his child. *Johnson* v. *Onsted*, 74 Mich. 437.

The decree in the court of chancery adverse to the wife, who was complainant, has established the fact, conclusive between them, that the defendant was without fault, and that she voluntarily and unjustifiably abandoned her husband and his home. Such decree has been held by this court not conclusive as to third parties. *Corry* v. *Lackey*, *supra*. It was clearly incumbent upon the plaintiff to prove the implied contract upon which he relied. Such contract is predicated upon the wrong of the husband and father. There is no presumption that the

mother was justified in taking her infant child away. The wrong of the father must be proven. There is no evidence in the case to sustain it. The only evidence in the case is against her, viz., the decree. See *Hunt* v. *Thompson*, 3 Scam. 179; Schouler, Dom. Rel. § 237.

2. I am of the opinion that plaintiff's claim was included in the wife's allowance for alimony made by the chancery court. It is true that a part of plaintiff's services were rendered previous to any allowance for alimony. As a ground for the allowance made July 11, 1891, plaintiff's bill, amounting then to $44, was appended to her petition, accompanied by an affidavit by the plaintiff setting forth the services rendered to the wife and child. Upon this petition and the proofs adduced, the court allowed additional temporary alimony to the amount of $75, and increased the weekly allowance for the support of the child. I think it the fair inference that the plaintiff's bill was included in that allowance, although the order did not so specifically state. No other purpose in presenting this claim is apparent than to secure its payment in that proceeding, and to have it included in the allowance. Such, too, is the common practice. It was held in *Bauman* v. *Bauman, supra*, that, in the absence of evidence to the contrary, it would be presumed that solicitor's fees were considered in fixing the amount of alimony *pendente lite*. If this be so, the sufficiency of the allowance cannot be attacked collaterally. *Crittenden* v. *Schermerhorn, supra*.

Judgment reversed, with the costs of all courts, and no new trial granted.

McGRATH, C. J., and MONTGOMERY, J., concurred in the reversal upon the second point. LONG and HOOKER, JJ., did not sit.