CATHERINE SHIELDS *vs.* TIMOTHY O'REILLY.

Third Judicial District, New Haven, June Term, 1896. ANDREWS, C. J.,
       TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

> During coverture the duty of supporting a needy minor child rests, in the
>   first instance, upon the father. He is however, ordinarily entitled to
>   the custody of the child, and if wrongfully deprived thereof by the
>   mother the latter cannot, so long as her possession remains unlawful,
>   pledge her husband's credit to a third person who receives and sup-
>   ports the child with full knowledge of all the facts. But if the custody
>   of the wife, although originally wrongful as against her husband,
>   afterwards becomes lawful by virtue of an order of court restraining
>   him from taking the child or interefering with her custody and control
>   pending her suit for a divorce, the father's liability revives, and for
>   the reasonable value of the support thereafter furnished, the third per-
>   son may recover of the father; especially if it appears that the wife
>   had no property and was unable to earn enough for her own support.

[Argued June 4th—decided October 6th, 1896.]

ACTION to recover for board, lodging, medicine, etc., fur-
nished by the plaintiff to the wife and daughter of the defend-
ant, brought to the District Court of Waterbury and tried
to the jury before *Walsh, J.;* verdict and judgment for the
plaintiff, and appeal by the defendant for alleged errors in
the charge of the court. *No error.*

The case is sufficiently stated in the opinion.

*Charles G. Root,* for the appellant (defendant).

No action can be maintained against a father for the purchase
of goods on his credit, by a minor child, even for necessaries,
unless the father has expressly or impliedly authorized the
purchase. The mere moral obligation of a parent to main-
tain his child, affords no legal inference of a promise to pay
a debt even for necessaries. *Freeman* v. *Robinson,* 38 N. J.
L. 383; *Kelly* v. *Davis,* 49 N. H. 187; *Finch* v. *Finch,* 22
Conn. 415; *Conboy* v. *Howe,* 59 Conn. 114; Schouler's Dom.
Rel. § 241. If the wife leaves the husband without cause,
taking the minor child with her, she has apparently no right

as agent to pledge her husband's credit for the child's neces-
saries, whatever might be the husband's legal duty of pro-
viding for the child's support.    *Baldwin* v. *Foster*, 138 Mass.
449; *McMillen* v. *Lee*, 78 Ill. 443; *Freeman* v. *Robinson*, 38
N. J. L. 383; Schouler on Husband and Wife, § 101.    The
injunction did not change the aspect of things, nor make the
defendant liable, where he would not be at common law;
and the court erred in so charging the jury.    Can an injunc-
tion make the husband liable without a statute?    And where
is the statute which imposes any such liability?    Section 2812
of the General Statutes does provide for the maintenance of
the child after the *dissolution* of the marriage; but it has no
application to an injunction before dissolution.    *Finch* v.
*Finch*, 22 Conn. 419–421; *Husband* v. *Husband*, 67 Ind. 583;
*Christoff* v. *Christoff*, 6 Ohio C. C. 512; *Brow* v. *Brightman*,
136 Mass. 187.

*John O'Neill* and *William Kennedy*, for the appellee
(plaintiff).

The duty to support minor children rests upon the father.
*Stanton* v. *Wilson*, 3 Day, 37; *Finch* v. *Finch*, 22 Conn. 411;
Gen. Stat. § 2797; *Buckingham* v. *Hurd*, 52 Conn. 404; *Welch's
Appeal*, 43 id. 342.    The restraining decree did not alter,
much less destroy, the relation of husband and wife.    His
duty and liability as to his child remained, except so far as
he was incapacitated by the terms of the decree.    *Welch's Ap-
peal, supra.*    Very slight evidence will sometimes warrant
the inference that a contract for an infant's necessaries is
sanctioned by the father, so zealous is the court to enforce a
moral obligation whenever it can.    Thus the father is held
bound for necessaries where he knows they are being fur-
nished to his child and makes no objection to their being so
furnished.    *Swain* v. *Tyler*, 27 Vt. 9; *Thayer* v. *White*, 13
Metc. 343; *Fowlkes* v. *Baker*, 29 Tex. 135; *Clark* v. *Clark*,
46 Conn. 586.    It has also been held that where the wife
left her husband's house and took her child with her, that
she might pledge his credit for the child's necessaries so long
as the husband neglected to make reasonable effort to regain

the child's custody. *Rumney* v. *Keyes*, 7 N. H. 571; *Kimball* v. *Keyes*, 11 Wend. 32; *Walker* v. *Leighton*, 11 Foster, 111; *Gill* v. *Read*, 5 R. I. 343; *Reynolds* v. *Sweetser*, 15 Gray, 78; *Grunhut* v. *Rosenstein*, 7 Daly, 164; *Bazeley* v. *Forder*, 3 Q. B. 559.

TORRANCE, J. This is an action to recover compensation for support furnished to the wife and child of the defendant. The complaint contains two counts, the first for the recovery of the amount claimed to be due on account of the wife, and the second for that due on account of the child. The defendant filed a general denial to each count, and also denied his liability upon either, because of the facts set up by him in his special defenses. The case was tried to the jury, who found the issues for the plaintiff, and assessed her damages at four hundred dollars. The present appeal is based wholly upon the charge of the court with reference to the liability of the defendant under the second count, for the support of the child. The following are the principal facts claimed to have been proved by the parties, which have a bearing upon that part of the charge of which the defendant complains :—

The defendant and his wife Mary, who was a daughter of the plaintiff, intermarried in April, 1890. The child in question, the issue of that marriage, was born in February, 1891. On the 27th of March, 1892, the defendant brought the child to the plaintiff's house, and according to the plaintiff's claim left it in her care, and promised to pay her therefor. The defendant denied that he promised to pay her. On the 29th of April, 1892, Mary left the defendant's house, and they never lived together after that date. The child remained in the custody of the plaintiff, and was maintained and cared for by her from March 27th, 1892, until April 12th, 1893. On that day Mary took her child from the custody of the plaintiff in Southington, and carried it to Naugatuck. Next day the defendant went to Naugatuck and got the child and carried it back to Southington ; and on the succeeding day Mary came to Southington, got possession of the child and took it again to Naugatuck. On the 20th of April, 1893, Mary

brought a suit for divorce against the defendant, on the ground of intolerable cruelty, and obtained in said suit, upon her *ex parte* application, an injunction against the defendant restraining him from in any way interfering with her custody of the child until the further order of the court. The injunction was served on the defendant on the 21st of April, 1893, and the complaint for divorce was duly returned to court, and was thenceforward pending therein up to the time Mary died, on the 13th of August, 1894. The defendant never attempted to have the injunction dissolved or modified. On the 22d of April, 1893, Mary brought the child to the plaintiff to have her care for and maintain it; and from thence to the 14th of September, 1894, it remained in the care and custody of the plaintiff and was supported and maintained by her. On the 14th of September, 1894, the defendant took the child into his own care and custody where it has since remained. The plaintiff claimed to recover on account of her care and maintenance of said child from March 27th, 1892, to September 14th, 1894, the sum of $568. Mary had no property during all of said period, and from the time she left her husband in April, 1892, to the first of January, 1894, she did not earn enough to pay her own expenses; and from January 1st, 1894, to the time of her death in August of that year, she was sick with consumption and unable to perform any kind of labor. The defendant has never paid the plaintiff anything for or on account of the support and care so furnished to his child. While the child was at the plaintiff's house, between March 27th, 1892, and April 12th, 1893, the defendant often visited it there and knew that the plaintiff was caring for and supporting it. He claimed to have proved that the plaintiff, in April, 1893, when he asked her how much he owed her on account of the child, had replied not a cent; but he admitted that something had been then said about making out a bill against him for such support; and he further claimed to have proved that he was willing and abundantly able to support the child during the existence of the injunction, if he could have had the custody of it.

The defendant requested the court to charge the jury that

if they found that the plaintiff when furnishing board to and caring for said child prior to April 12th, 1893, "did not intend to charge the defendant therefor, the plaintiff could not collect from the defendant for board furnished to or expenses incurred for said child prior to said date." The court refused to charge as requested, and charged upon this point as follows: "The plaintiff claims that in March, 1892, she took the child under an express agreement made by the defendant with her that she would care for it, and he would pay her for so doing. . . . The defendant denies making any such agreement, and claims that the child was absent from him against his wish. . . . If you find that there was an agreement made between the plaintiff and the defendant, that the defendant should pay the plaintiff for the board, clothing and care of the child, then you should render a verdict in favor of the plaintiff for such sum as you may find to be a reasonable compensation for the care of said child, during the time any such agreement may be found by you to exist." The defendant further requested the court to charge the jury that after the service of the injunction upon the defendant, and while it remained in force, "in the absence of any request by the defendant to the plaintiff to furnish board, lodging and care to said child, or of a promise by the defendant to pay for the same, the plaintiff could not recover of the defendant therefor." The court refused to charge as requested, and upon this point told the jury, in substance, that if they found that the plaintiff, during the period covered by the injunction, furnished necessary board, clothing and medicines for the child, for which she had not been paid, she was entitled to recover reasonable compensation therefor from the defendant. In refusing to charge as above requested, and in charging as above stated, the defendant claims the court erred, and these are the only errors assigned.

In the first request the court was asked to charge that if the plaintiff, in doing whatever she did for the child up to April 12th, 1893, "did not intend to charge the defendant therefor," she could not now recover of him therefor. If the real claim of the defendant, supported by evidence, had been

that the plaintiff intended to make a gift to him of whatever she did on behalf of the child, he would have been entitled to the substance of this request; but this was not the case. The claim of the plaintiff, supported by evidence, was that the defendant had expressly requested her to care for the child and had expressly promised to pay her therefor; while the real claim of the defendant, supported by evidence, was that there was no such request or promise, and that inasmuch as the child had been taken from him, and was kept by the plaintiff against his will, no such request or promise could be implied. The first request, therefore, embodied a mere hypothetical case unsupported by evidence, and the court was not bound to regard it. *Burnham* v. *Sherwood*, 56 Conn. 229, 232. Upon the real claim made by the defendant on this part of the case, the jury were, in effect, told that the plaintiff could not recover upon an implied agreement, but must recover if at all upon proof of an express one. This was certainly favorable to the defendant, perhaps more so than the facts as claimed by the plaintiff would seem to warrant. There is nothing in this part of the charge of which the defendant can justly complain.

With reference to the other point in the case, the facts, as the defendant claimed them, were these: that he was able and willing to support the child in a suitable manner at his home, and had it there for that purpose; that his wife, who had left him without adequate cause or excuse and for a year had refused to live with him, forcibly took the child in his absence from his home where it was being properly cared for, and carried it to her home in a distant town where she kept it against his will and consent; and that the plaintiff, when she took the child into her care from its mother, in April, 1893, had full knowledge of all these facts.

If the plaintiff had claimed to recover under this precise state of facts, it may be conceded that she could not do so as against the defendant; for in such case the law would not imply any agreement to pay on the part of the.defendant, and there is no express agreement to that effect; and without the one or the other there could be no recovery. In such

case the custody of the child by the mother and by the plaintiff, would have been a wrongful one as against the defendant, and the plaintiff, with full knowledge of the facts, could not have held the father responsible even for necessaries furnished to the child. *Finch* v. *Finch*, 22 Conn. 411; *Conboy* v. *Howe*, 59 id. 112, 114; *Freeman* v. *Robinson*, 38 N. J. L. 383; *Kelly* v. *Davis*, 49 N. H. 187. But this was not the precise state of facts; for there were the further facts of the injunction, and the continuous pecuniary inability of the mother to support the child, from the time she left her husband until her death. With these two added facts, we are of opinion that the charge complained of was correct. During the existence of the marriage relation it was clearly the duty of the defendant to support this child. The duty of the mother in this respect was, during the coverture, practically suspended or postponed. *Finch* v. *Finch*, *supra*. And although the duty of the mother in this matter has in our own State been to some extent regulated by statute (General Statutes, §§ 2797, 2812; *Welch's Appeal*, 43 Conn. 342; *Buckingham* v. *Hurd*, 52 id. 404), it still remains true that the duty of supporting needy minor children rests, during coverture and in the first instance, upon the husband alone. In imposing this duty on the father however, the law allows him to perform it ordinarily in his own way, and measurably according to his own discretion, and gives him certain rights over the child, among which is the right to the care and custody of it. Prior to the injunction, upon the facts as claimed by the defendant, the possession of the mother was, as against the defendant, an unlawful possession; and chiefly because it was such, she could not pledge for the support of the child, the credit of her husband, to the plaintiff or to any third party who had full knowledge of all the facts; but the action of the Superior Court upon the petition of the mother, to which the defendant was made a party, in effect gave the custody of the child to the mother alone, and thereafter her custody was a lawful one even as against the defendant. It was the same as if the court itself had found the child in the father's custody, and in the exercise of a sound discretion

had committed it to the sole custody of the mother, temporarily. The Superior Court acting for the best interest of the child clearly had by statute the power to do this, and in effect this is just what it did. The order was a temporary one merely, and it deprived the defendant of none of his rights over the child except that of care and custody for a time, and he was at liberty at any time to move to have the order rescinded or modified, if he could prove that the best interests of the child would be thereby subserved. The mother had no property, was not bound by law to support the child, and was unable by her earnings even to support herself; while the father was abundantly able to support it, and the law made it his duty to support it. Under these circumstances we are of opinion that it was still the duty of the defendant to support the child, notwithstanding the fact that he had been by the action of the court temporarily deprived of its care and custody; and that if he failed to perform this duty he was liable to a third party who in good faith at the request of the wife, during the time the child was rightfully in her care and custody, supplied it with necessary support.

There is no error.

In this opinion the other judges concurred.