## FORD v. S. KANN SONS CO.
### No. 957.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 2, 1950.

Decided Nov. 2, 1950.

William A. Kehoe, Jr., Washington, D. C., with whom Al. Philip Kane and Charles V. Koons, Washington, D. C., were on the brief, for appellant.

Robert B. Frank, Washington, D. C., with whom Milton W. King, Bernard I. Nordlinger, Wallace Luchs, Jr., and Ellis B. Miller, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

S. Kann Sons Co. sued William H. Ford and his wife, Lucille R. Ford, for the balance of an open account. Judgment by default was had against Mrs. Ford. Mr. Ford contested the claim and after trial judgment was entered against him. He has appealed.

The account was opened by the wife in her own name. She filed a written application for credit, showing that she was unemployed and giving her husband's occupation and some details regarding it. An employee in plaintiff's credit department testified it was the policy of plaintiff to grant credit in

such cases on the basis of the husband's income and employment record. An itemized statement of all charges and credits of the account was received in evidence. It shows the account in the name of the wife, that the first charge was February 6, 1946, and that various charges and credits were made thereafter until April 29, 1948. The items purchased appear to have been feminine wearing apparel and household supplies such as sheets, towels and curtains. The purchases appear modest in amount. The account shows it was fully paid on January 15, 1947, so that the amount sued for ($90.66) represented purchases after that date, less payments on account.

Mr. Ford testified that he had instructed his wife not to open any charge accounts; that he gave her regular weekly sums and instructed her that all bills were to be paid in cash immediately; that he never consented to opening this account, personally made no payments on it and knew nothing of it until sometime after his wife deserted him; that she deserted him about January 5, 1947, taking with her all the furniture in the apartment, $1,000 in bonds and $300 in cash; that after the desertion he inserted three notices in a local newspaper to the effect that he would not be responsible for any debts except those made by him personally. There was no evidence that this notice ever came to the attention of plaintiff.

Mr. Ford also testified that he and his wife had a joint checking account, that his wife generally kept the check book and wrote the checks, but he also drew checks from time to time and computed the balance by examining the check stubs, and the stubs indicated that his wife had drawn checks to plaintiff. He further testified that when he and his wife were living together he had seen statements of account mailed to his address from various stores in the city but "he left those matters to his wife and never examined any of these bills in detail."

■ The judgment against the husband cannot be sustained on the basis of his liability for necessaries supplied his wife. The only basis for such liability would be the husband's neglect, failure or refusal to furnish such necessaries [1] and there is no showing here of any neglect or default on his part in this respect.

■ If the judgment is to be sustained it must be on the basis of the wife's express or apparent authority to pledge her husband's credit. It is settled that the wife by her relationship alone has no power to act as agent for her husband. "The relationship is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife." [2] The existence of such authority is a question of fact and our question is whether there was sufficient evidence to sustain a finding of apparent authority. [3]

■ Although the husband had forbidden his wife to open charge accounts, nevertheless she opened such accounts and he saw statements of those accounts mailed to his address. He did not bother to examine them in detail but left those matters to his wife. He and she had a joint checking account and he supplied the money which went into that account. He examined the check book from time to time and saw that his wife had drawn checks to plaintiff. The account with plaintiff ran for approximately one year prior to her desertion. This evidence furnished a substantial basis for a finding that the husband by his acts gave his wife, so far as plaintiff was concerned, apparent authority to pledge his credit for those purchases. "No doubt, though not intending to hold her out as his agent, and though she may not actually have had authority, the husband may have so conducted himself as to entitle a tradesman dealing with her to rely upon some appear-

1. Maschauer v. Downs, 53 App.D.C. 142, 289 F. 540, 32 A.L.R. 1461.

2. Restatement, Agency, § 22, Comment b. See also Tyler v. Mutual District Messenger Co., 17 App.D.C. 85.

3. See Saks v. Huddleston, 59 App.D.C. 133, 36 F.2d 537, where it was held that there was no evidence of acts or conduct on the part of the husband conferring upon his wife apparent authority to pledge his credit.

ance of authority for which the husband ought to be held responsible. If he has so acted, he may be bound; but the question must be examined as one of fact, * * *." Debenham v. Mellon, 5 Q.B.Div. 394, as quoted in Wanamaker v. Weaver, 176 N.Y. 75, 68 N.E. 135, 137, cited in Saks v. Huddleston, 59 App.D.C. 133, 36 F.2d 537.[4]

■ The wife's desertion, without knowledge thereof by plaintiff, did not terminate her apparent authority.[5]

■ The husband insists that, even if the wife had apparent authority to pledge his credit, there is no evidence that she did so or that plaintiff extended credit to him. It is true that the wife's application for credit stated the application was for "self" and the account was opened and continued in her name alone. If credit was extended exclusively to the wife, the husband was not liable; but the fact that the account was opened in the wife's name and bills sent to her alone is not conclusive that credit was given exclusively to the wife.[6] Whether credit was extended to the husband was a question of fact to be determined under all the circumstances.

It is also contended that because plaintiff sued and obtained judgment against the wife, such act established that credit was extended to her and not to the husband. While it may be unusual for a wife in making purchases to pledge her own credit as well as that of her husband, we know of no legal reason why it cannot be done.

Affirmed.

4. See also Restatement, Agency, § 22, Illustration 2.

5. Restatement, Restitution, § 113, Illustration 5.

6. Maschauer v. Downs, supra, Note 1; Henri Bendel, Inc., v. Edeson, 125 Misc. 433, 210 N.Y.S. 141.